UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                                   :

JACQUELINE GONZALEZ,                    :          **MEMORANDUM**
                                                      :          **DECISION AND ORDER**
                       Plaintiff,        :
                                                      :          19-cv-2946 (BMC)
                - against -          :
                                                      :

ANDREW SAUL,                          :
                                                      :
                       Defendant.      :
                                                    :
-------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff Jacqueline Gonzalez seeks review of the decision of the Commissioner of Social Security denying her Supplemental Security Income under the Social Security Act. After a hearing, an Administrative Law Judge ("ALJ") found that plaintiff was not "disabled" within the meaning of 42 U.S.C. § 1382c(a)(3)(A)–(B). Although the ALJ found that plaintiff had a number of severe physical and mental impairments, the ALJ also found that plaintiff was capable of performing sedentary work with significant limitations to accommodate her physical limitations – namely, plaintiff could perform simple, routine, repetitive tasks with occasional interaction with coworkers and no interaction with the general public.

In this review proceeding, plaintiff challenges only the finding relating to her mental impairments, which consist of bipolar I disorder, generalized anxiety disorder, and panic disorder. Plaintiff contends that the ALJ improperly discounted the opinion of her treating physician and that the ALJ failed to comply with the procedural requirements for not fully accepting plaintiff's description of her symptoms.

On the medical evidence side, the competition was primarily between plaintiff's treating psychiatrist, Dr. Edita Raagas, M.D., and a state agency psychologist, Amy Theobald, Psy.D.[1] Plaintiff was sent to Dr. Theobald first because she had not received psychiatric treatment for two-and-a-half years before her alleged onset date, so there were no current treatment records. Dr. Theobald gave a detailed report, finding a "mild limitation" of plaintiff's ability to perform certain job-related tasks, a "mild to moderate limitation" of plaintiff's ability to maintain a regular schedule and perform complex tasks independently, and a "moderate limitation" of her ability to deal with stress, among other issues. These "[d]ifficulties" were "caused by anxiety and panic" and "appear[ed] to be consistent with psychiatric problems." The ALJ still found that these problems did not "appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis."

Although Dr. Raagas expressed a contrary opinion in two medical source questionnaires, the ALJ stated that he was giving only "some weight in general" to Dr. Raagas's opinions. The ALJ acknowledged that Dr. Raagas's opinions regarding "the degree of [plaintiff's] mental limitations" were "generally supported by the evidence in the record." However, the ALJ gave "little weight" to Dr. Raagas's opinion that plaintiff was "likely to be absent from work more than three times a month on average as a result of her impairments or treatment." For support, the ALJ offered only two reasons: that Dr. Raagas's opinion was inconsistent with her own treatment notes, and that the opinion was inconsistent with "the overall evidence in the record, especially the mental status findings of the consultive psychological examiner, Dr. Theobald." Accordingly, the ALJ gave "significant weight" to the opinions of Dr. Theobald.

---

[1] The ALJ gave "significant weight" to the opinions of another consulting psychiatrist, Dr. M. Brandt. It does not appear that Dr. Brandt examined plaintiff and he had limited records. His brief statement essentially paralleled that of Dr. Theobald.

Although the ALJ is not *per se* precluded from giving a consultant's opinion controlling weight, the Second Circuit made clear in Burgess v. Astrue, 537 F.3d 117 (2d Cir. 2008), and Estrella v. Berryhill, 925 F.3d 90 (2d Cir. 2019), that an ALJ must follow specific procedures when determining the weight to assign the treating physician's opinion:

> First, the ALJ must decide whether the opinion is entitled to controlling weight. "The opinion of a claimant's treating physician as to the nature and severity of an impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" Burgess, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(c)(2)). Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must "explicitly consider" the following, nonexclusive "Burgess factors": "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing Burgess, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).

Estrella, 925 F.3d at 95–96 (*colatus*). "At both steps, the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion." Id. at 96 (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2))). The failure to explicitly consider the Burgess factors is a procedural error that will not be deemed harmless unless "a searching review of the record assures [the Court] that the substance of the rule was not traversed – *i.e.*, whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating physician's] opinion." Id. (*colatus*).

In this case, the ALJ failed to follow these procedures. Both Burgess and Estrella make clear that comparing a treating physician's opinion to that of a single-shot consultant, or a physician that reviews only limited records, requires some skepticism on the part of the ALJ, particularly in evaluating mental impairments. See Estrella, 925 F.3d at 96; Burgess, 537 F.3d at

128.  But here, the ALJ offered only the conclusory assertion that Dr. Raagas's opinions were inconsistent with her treatment notes and the circular conclusion that her opinions were inconsistent with those of the consultants.

The ALJ's evaluation of Dr. Raagas's medical source statements is not only procedurally defective; it has made review of the ALJ's conclusion next to impossible.  Often in the review of these mental impairment cases, the task of the federal courts is to discern whether the ALJ has unreasonably excerpted portions of the treatment notes to support a finding of non-disability, as opposed to finding a pervasive inconsistency between the treatment notes and the medical source statement.  See, e.g., Sutherland v. Barnhart, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004).  That is not the case here.  The ALJ did not cite or reference any of Dr. Raagas's treatment notes.  There are nearly 250 pages of them.  Thus, if I were to determine whether the ALJ's finding of inconsistency is based on a reasonable reading of the treatment notes, I would have to review the treatment notes *de novo*.  That is not the function of a court of review.  The ALJ needs to analyze the treatment notes and explain the conclusion that they do not support Dr. Raagas's opinions, if the analysis would support that.

The other stated reason for discounting Dr. Raagas's opinions is that they were "inconsistent with the overall evidence in the record, especially the mental status findings of the consultive psychological examiner, Dr. Theobald."  In contrast to the analysis of the treatment notes, the ALJ's analysis of Dr. Theobald's report (which is much shorter than Dr. Raagas's treatment notes) is sufficiently detailed that I can see the plain inconsistency.  But the ALJ's reasoning is circular.  Dr. Raagas's opinions cannot be rejected simply because they are inconsistent with those of Dr. Theobald.  Of course they are inconsistent.  The question is why

the reports of the consultants – one of whom never met plaintiff and one of whom saw her on one occasion – are more persuasive than those of Dr. Raagas.

It certainly wasn't because the consultants knew plaintiff better.  And it also wasn't because Dr. Raagas's opinions were inconsistent with plaintiff's testimony or statements in her application.  Plaintiff testified that she had to quit her last job because her panic attacks were incapacitating her from working, and perhaps more importantly, when she reapplied, her former employer told her that it could not rehire her because of her continuing problems with panic and anxiety attacks.  Her anxiety, according to her testimony and statements (and Dr. Raagas's treatment notes) is triggered by enclosed spaces, crowds, and lots of people around her.  Her legs start shaking, and she gets nausea, chest pain, and headaches.  She gets these panic attacks two to three times per week and they last twenty to thirty minutes.  She has severe sleeping problems.  This testimony reflects the same basic symptomology that formed the basis for Dr. Raagas's opinion that plaintiff would miss work more than three times per month – as she had in the past, until she had to quit.

Plaintiff's motion of judgment on the pleadings is therefore granted, and the Commissioner's motion is denied.  The case is remanded for a rehearing pursuant to 42 U.S.C. § 405(g), limited to whether plaintiff's mental impairments render her disabled.  In answering the question, (1) the ALJ shall have Dr. Theobald or a medical expert review Dr. Raagas's treatment notes and medical source statements and provide a new functional assessment report or testify concerning same; and (2) if the ALJ again concludes to not give Dr. Raagas's opinions controlling weight, the ALJ shall state the reasons as required by Burgess and Estrella, and the ALJ shall explain whether the treatment notes are overall inconsistent with Dr. Raagas's opinions by specific references to the treatment notes.

The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

Digitally signed by
Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
       December 16, 2020